[PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
FEBRUARY 17, 2009
THOMAS K. KAHN
CLERK

_____

No. 08-14432
Non-Argument Calendar

_____

D. C. Docket No. 07-00774-CV-W-S

PHILIP P. CASALE,

Plaintiff-Appellant,

versus

MARTHA N. TILLMAN,

Defendant-Appellee.

_____

Appeal from the United States District Court
for the Middle District of Alabama

_____

(February 17, 2009)

Before TJOFLAT, DUBINA, and CARNES, Circuit Judges.

PER CURIAM:

Philip Casale appeals the dismissal of his complaint for lack of subject

matter jurisdiction. In that complaint, Casale asked the district court to enjoin his former wife, Martha Tillman, from domesticating several Georgia state court contempt orders in Alabama state court because those orders violated the Uniformed Services Former Spouses' Protection Act ("FSPA"), 10 U.S.C. § 1408. Because the district court correctly found that it lacked subject matter jurisdiction under the Rooker-Feldman doctrine, we affirm.[1]

Casale and Tillman were divorced in 1991 by decree of the Superior Court of Chatham County, Georgia. At the time of the divorce, Casale was an active-duty warrant officer with the United States Army. The divorce decree awarded Tillman half of Casale's military retirement pay and noted that Casale "shall not pursue any course of action that would defeat" Tillman's right to receive her portion of that pay. It also provided that if Casale took a new job that caused "a merger" of his military retirement pay, he would be directly responsible for paying Tillman the same monthly amount she would have otherwise received from his retirement benefits. The decree did not address how the retirement payments to Tillman would be affected if Casale reentered the military.

---

[1] The district court noted two other reasons it could not consider Casale's complaint: because Casale's claim did not arise under federal law as required by 28 U.S.C. § 1331 and because the Anti-Injunction Act prohibits federal courts from enjoining state court actions unless one of three narrow exceptions, not applicable in his case, applies. Due to our Rooker-Feldman holding, we need not address Casale's arguments on these issues.

Casale eventually retired from active duty and began drawing retirement pay, which he split with Tillman as required by the divorce decree. When Casale returned to active duty in 2002, however, he stopped receiving retirement pay and stopped making the related payments to Tillman. In 2003 Tillman sought and received a Georgia state court order holding Casale in contempt for his failure to make the military retirement and child support payments required by the decree. Between 2003 and 2004 the Georgia state court issued three more contempt orders for Casale's continued failure to pay. Casale does not argue that he is, or ever has been, unable to appeal the contempt orders within the Georgia state court system.[2]

At some point after the judgment that resulted from the contempt orders, Casale moved to Alabama. In late 2007, Tillman attempted to domesticate in Alabama the Georgia judgment. Instead of raising his defenses in Alabama state court, Casale filed a lawsuit in district court seeking to enjoin Tillman from pursuing the Alabama action. Casale argued that the FSPA preempted a state court's ability to compel members of the military to retire, which he asserted was the effect of the Georgia state court's decision to hold him in contempt for discontinuing retirement payments to his ex-wife. Given that preemption, he argued, the Georgia court judgment violated federal law.

---

[2] In fact, Tillman claims that Casale actually has appealed—all the way to the Georgia Supreme Court. See Casale v. Tillman, No. 1:07-cv-774-WKW, at 2 (M.D. Ala. July 15, 2008).

The district court concluded that it lacked jurisdiction to decide Casale's case because, among other reasons, the Rooker-Feldman doctrine barred federal court review of state court final judgments—a function reserved in the federal system for the United States Supreme Court. See D.C. Court of Appeals v. Feldman, 460 U.S. 462, 482, 103 S. Ct. 1303, 1315 (1983); Rooker v. Fid. Trust Co., 263 U.S. 413, 415-16, 44 S. Ct. 149, 150 (1923). It noted that Casale's claim was "inextricably intertwined" with the Georgia judgment because that claim was based on his belief that the state court's ruling was wrong, and it essentially asked the district court to "review and reverse the Georgia court."

Citing our decision in Powell v. Powell, 80 F.3d 464 (11th Cir. 1996), the district court emphasized that Casale should have raised his preemption arguments during the Georgia proceedings because a state court's "interpretation of federal law is no less authoritative than that of the [corresponding] federal court of appeals." Id. at 467 (internal quotation marks omitted). That principle of federalism is well settled. Id.; see also Lockhart v. Fretwell, 506 U.S. 364, 376, 113 S. Ct. 838, 846 (1993) (Thomas, J., concurring); Anders v. Hometown Mortgage Servs., Inc., 346 F.3d 1024, 1033 (11th Cir. 2003) ("State and federal courts are free to decide federal law issues for themselves (unless and until the United States Supreme Court settles the matter).").

4

We review de novo a district court's finding that it lacks subject matter jurisdiction. Dale v. Moore, 121 F.3d 624, 626 (11th Cir. 1997). The Rooker-Feldman doctrine makes clear that federal district courts cannot review state court final judgments because that task is reserved for state appellate courts or, as a last resort, the United States Supreme Court. See Feldman, 460 U.S. at 482, 103 S. Ct. at 1315. The doctrine applies both to federal claims raised in the state court and to those "inextricably intertwined" with the state court's judgment. Id. at 482 n.16, 103 S. Ct. at 1315 n.16. It does not apply, however, where a party did not have a "reasonable opportunity to raise his federal claim in state proceedings." Powell, 80 F.3d at 467 (internal quotation marks omitted). A claim is inextricably intertwined if it would "effectively nullify" the state court judgment, id. (internal quotation marks omitted), or it "succeeds only to the extent that the state court wrongly decided the issues." Goodman ex rel. Goodman v. Sipos, 259 F.3d 1327, 1332 (11th Cir. 2001).

While the Supreme Court's recent Rooker-Feldman decisions have noted the "narrowness" of the rule, see Lance v. Dennis, 546 U.S. 459, 464, 126 S. Ct. 1198, 1201 (2006), they have also confirmed that it continues to apply with full force to "cases brought by state-court losers complaining of injuries caused by state-court judgments rendered before the district court proceedings commenced and inviting

5

district court review and rejection of those judgments." Exxon Mobil Corp. v. Saudi Basic Indus. Corp., 544 U.S. 280, 284, 125 S. Ct. 1517, 1521-22 (2005). Other circuits have recognized an exception to the doctrine where the state court judgment is "void ab initio due to the state court's lack of jurisdiction," see, e.g., 4901 Corp. v. Town of Cicero, 220 F.3d 522, 528 (7th Cir. 2000); In re James, 940 F.2d 46, 52 (3d Cir.1991), but our circuit has never adopted that exception.[3]

Casale now contends that Exxon and Lance have narrowed the Rooker-Feldman doctrine to the point where it is inapplicable to his case. He argues that his FSPA claim is not inextricably intertwined with the state court judgment because it challenges only the state court's jurisdictional authority and not the merits of that decision. Because the FSPA preempts a state court's ability to "compel or coerce" military personnel to retire, Casale asserts not that the court decided incorrectly—as in the typical Rooker-Feldman situation—but that the court was wrong to decide at all.

Casale's arguments fail. We do not agree that the Georgia state court ordered Casale to retire or to forgo his return to active duty. Instead, the state court judgment only required him to get current on the payments identified in the divorce decree. His attempt to characterize an order requiring payment as one directing

---

[3] Because, as we will explain, the state court had jurisdiction to issue its judgment, we have no occasion to decide whether there should be an exception where jurisdiction is lacking.

him to retire from his employment is unpersuasive. Although the divorce decree did not specifically address how Tillman's payments would be affected if Casale reentered the military, it did address what would happen if Casale became employed again: he would be responsible for making payments to Tillman in the amount she otherwise would have received. Any argument that active-duty pay should be treated differently under the state court decree than pay from civilian jobs—and thus should cut off retirement payments to Tillman during Casale's new tour of duty—was for the state appellate court to decide in a direct attack by Casale on the validity of the contempt orders.

The state court clearly had jurisdiction over Casale and Tillman's divorce, including the power to create remedies to enforce the decree. If Casale believed the state court's result was based on a legal error, the proper response was the same one open to all litigants who are unhappy with the judgment of a trial court: direct appeal. We are not a clearinghouse for Casale's overstock arguments; if he did not offer them to the state courts—or if the state courts did not buy them—he cannot unload them by attempting to sell them to us. Casale is just the sort of "state-court loser[]" the Rooker-Feldman doctrine was designed to turn aside. See Exxon, 544 U.S. at 284, 125 S. Ct. at 1521–22. The district court's grant of Tillman's motion to dismiss for lack of subject matter jurisdiction is **AFFIRMED**.