[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT
_____

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
SEPT 23, 2010
JOHN LEY
CLERK

No. 10-11089
Non-Argument Calendar
_____

D.C. Docket No. 7:09-cv-00068-HL

DENNY C. CORMIER,

Plaintiff-Appellant,

versus

HONORABLE FRANK D. HORKAN,
Superior Court Judge,
DWIGHT MAY,
GEORGE ERVIN PERDUE, III,
Governor of Georgia,
a.k.a. Sonny Perdue,
JOHN B. ALDERMAN,
Chairman of Colquitt County Commissioners, Georgia,
GEORGIA, COLQUITT COUNTY, et. al.,

Defendants-Appellees.

_____

Appeal from the United States District Court
for the Middle District of Georgia
_____

(September 23, 2010)

Before BLACK, PRYOR and ANDERSON, Circuit Judges.

PER CURIAM:

Denny C. Cormier appeals the district court's order dismissing his *pro se* complaint, which alleged various constitutional and statutory violations in connection with his state court divorce proceedings and requirement to pay alimony, for failure to state a claim. The underlying dispute arose after the Georgia Superior Court, per Judge Horkan, entered a final decree dissolving the marriage and awarding Cormier's ex-wife alimony in 2005. *Cormier v. Cormier*, 280 Ga. 693, 693, 631 S.E.2d 663, 664 (Ga. 2006) (*Cormier I*). In June 2009, Cormier filed the present action in federal court against seven defendants,[1] alleging violations of the Fifth, Thirteenth, and Fourteenth Amendments, 42 U.S.C. §§ 1982, 1983, 1985, 1994, the federal and Georgia RICO statutes, and the common-law torts of intentional infliction of emotional distress and tortious interference with business relations. Cormier's complaint sought to invalidate the state-court alimony order, among other relief. The district court granted the defendants' motions to dismiss, holding that Governor Perdue and Judge Horkan were immune from suit under the doctrines of sovereign and judicial immunity and

---

[1] The defendants included the Governor of Georgia ("Sonny" Perdue), Judge Horkan, the Chairman of Colquitt County Commissioners, Colquitt County, Cormier's ex-wife, her attorney, and Cormier's mother-in-law.

2

that Cormier's complaint failed to state a claim upon which relief could be granted as to all counts. Accordingly, the court dismissed Cormier's requests for declaratory judgment and injunctive relief. This appeal ensued.

Although the district court did not address the defendants' argument in their motions to dismiss that it lacked subject matter jurisdiction over Cormier's complaint, we are compelled to review the district court's subject-matter jurisdiction *de novo*. *See Zakrzewski v. McDonough*, 490 F.3d 1264, 1267 (11th Cir. 2007). "A federal court must always dismiss a case upon determining that it lacks subject matter jurisdiction, regardless of the stage of the proceedings, and facts outside of the pleadings may be considered as part of that determination." *Goodman ex rel. Goodman v. Sipos*, 259 F.3d 1327, 1332 n.6 (11th Cir. 2001). After thorough review of the record and the parties' briefs, we conclude that the district court lacked jurisdiction over Cormier's complaint, which was barred by the *Rooker-Feldman* doctrine. *See Rooker v. Fidelity Trust Co.*, 263 U.S. 413, 415-16, 44 S. Ct. 149, 150 (1923); *D.C. Court of Appeals v. Feldman*, 460 U.S. 462, 476–82, 103 S. Ct. 1303, 1311–15 (1983).

"The *Rooker-Feldman* doctrine places limits on the subject-matter jurisdiction of federal district courts and courts of appeal over certain matters related to previous state court litigation." *Goodman*, 259 F.3d at 1332. Under the

3

*Rooker-Feldman* doctrine, federal district courts cannot review final state court judgments because "that task is reserved for state appellate courts or, as a last resort, the United States Supreme Court." *Casale v. Tillman*, 558 F.3d 1258, 1260 (11th Cir. 2009). The Supreme Court has only applied the doctrine on two occasions, and has recently reiterated that the scope of the *Rooker-Feldman* doctrine is exceedingly narrow, "confined to cases of the kind from which the doctrine acquired its name: cases brought by state-court losers complaining of injuries caused by state-court judgments rendered before the district court proceedings commenced and inviting district court review and rejection of those judgments." *Exxon Mobil Corp. v. Saudi Basic Indus. Corp.*, 544 U.S. 280, 284, 125 S. Ct. 1517, 1521–22 (2005); *see also Nicholson v. Shafe*, 558 F.3d 1266, 1268 (11th Cir. 2009).

Prior to *Exxon Mobil*, our circuit had traditionally applied a four-factor test to guide the application of the *Rooker-Feldman* doctrine, finding that it bars federal jurisdiction where: "(1) the party in federal court is the same as the party in state court; (2) the prior state court ruling was a final or conclusive judgment on the merits, (3) the party seeking relief in federal court had a reasonable opportunity to raise its federal claims in the state court proceeding, and (4) the issue before the federal court was either adjudicated by the state court or was

4

inextricably intertwined with the state court's judgment." *Amos v. Glynn County Bd. of Tax Assessors*, 347 F.3d 1249, 1266 n.11 (11th Cir. 2003) (citations omitted). However, due to the Supreme Court's cautionary statement in *Exxon Mobil* that the *Rooker-Feldman* doctrine "has sometimes been construed to extend far beyond the contours of the *Rooker* and *Feldman* cases," 544 U.S. at 283, 125 S. Ct. at 1521, we have since declined to adhere to the *Amos* test. *See Nicholson*, 558 F.3d at 1274 (electing to apply *Exxon-Mobil*'s strict language confining the doctrine to "cases brought by state-court losers complaining of injuries caused by state-court judgments rendered before the district court proceedings commenced and inviting district court review and rejection of those judgments" as opposed to the *Amos* test).

Thus, for the *Rooker-Feldman* doctrine to apply under the strictures of *Exxon-Mobil*, we must first determine whether the state court "rendered judgment before the district court proceedings commenced." *See id.* Cormier filed his federal complaint in this lawsuit on June 2, 2009, almost three years after the Georgia Supreme Court affirmed the Superior Court's final decree in his state court divorce action. *See Cormier I*, 280 Ga. at 696, 631 S.E.2d at 665. Because Cormier exhausted his state court remedies well before he filed this federal suit, the state proceedings had ended for purposes of the *Rooker-Feldman* doctrine. *Cf.*

5

*Nicholson*, 558 F.3d at 1278 ("[B]ecause the Appellants filed the instant federal action while the state court action continued in the appeals process in state court, the state proceedings had not ended.").

Secondly, we must determine whether a plaintiff is a state-court loser who is complaining of injuries caused by state-court judgments. *See Exxon-Mobil*, 544 U.S. at 284, 125 S. Ct. at 1521–22. In doing so, our circuit has continued to apply the fourth factor of the *Amos* test, evaluating whether the plaintiff's claims are "inextricably intertwined" with the state court judgment. *See Casale*, 558 F.3d at 1260 (quoting *Feldman*, 460 U.S. at 482 n.16, 103 S. Ct. at 1315 n.16). "A claim is inextricably intertwined if it would effectively nullify the state court judgment or it succeeds only to the extent that the state court wrongly decided the issues." *Id.* (internal quotations and citations omitted). Evaluating Cormier's complaint under this standard, we conclude that it falls directly within the scope of the *Rooker-Feldman* doctrine's jurisdictional bar.

In his complaint, Comier generally seeks to invalidate the state court's alimony ruling through various constitutional, statutory, and common law challenges. The essence of his complaint is that various private and state actors conspired to use the Georgia Alimony Statutes, O.C.G.A. §§ 19-6-1 et seq., to place him into a condition of involuntary servitude through an unconstitutional

6

alimony-peonage contract. Although Cormier seeks damages in the amount of $1 million for his alleged injuries, he also expressly prays for an injunction setting aside the current alimony order, any future orders seeking to enforce the court's divorce decree, and the final judgment of the Georgia Superior Court.

In *Casale v. Tillman*, we held that the federal courts lacked subject matter jurisdiction over a similar complaint, which sought to invalidate a state-rendered contempt order in connection with a divorce proceeding. 558 F.3d at 1261. Like Cormier, the plaintiff in *Casale* attempted to use the federal courts to enjoin his ex-wife from enforcing an aspect of the state-court judgment, arguing that the contempt orders, which held him in contempt for discontinuing retirement payments to his ex-wife, violated the Uniformed Services Former Spouses' Protection Act ("FSPA"), 10 U.S.C. § 1408, by effectively compelling him to retire from military service. *Id.* We concluded that such a claim, although a federal preemption challenge, was "inextricably intertwined" with the state court judgment and that Casale was "just the sort of 'state-court loser' the *Rooker-Feldman* doctrine was designed to turn aside." *Id.* (alteration omitted). We concluded that "[i]f Casale believed the state court's result was based on a legal error, the proper response was the same one open to all litigants who are unhappy with the judgment of a trial court: direct appeal." *Id.*

7

Cormier's complaint is equally barred by the *Rooker-Feldm*an doctrine because his constitutional and statutory challenges are essentially an effort to block enforcement of the state court's alimony order. Success on his federal claims would "effectively nullify" the state court judgment; thus, his claims are inextricably intertwined with the divorce action, and Cormier should have pursued all of his claims on direct appeal. *See id.* Accordingly, his complaint falls within the confines of the *Rooker-Feldman* jurisdictional bar, and it is unnecessary for us to address Cormier's claims raised on appeal.[2] In conclusion, we vacate the district court judgment and remand with instructions to dismiss Cormier's complaint for lack of jurisdiction.[3]

VACATED and REMANDED; DISMISSED for lack of jurisdiction.

---

[2] We note that Cormier abandoned many claims by not raising them in his briefs on appeal. *Timson v. Sampson*, 518 F.3d 870, 874 (11th Cir. 2008) (stating that, although *pro se* briefs are liberally construed, "issues not briefed on appeal by a *pro se* litigant are deemed abandoned"). As to the issues Cormier did raise, we find them all meritless. Even if the *Rooker-Feldman* doctrine was not dispositive of Cormier's lawsuit, we would still affirm the district court's dismissal of Cormier's complaint for the reasons set forth in its opinion, which warrants no further discussion.

[3] Cormier's motion for leave to file an amended reply brief is granted.