Jake MENDEL, in his capacity as personal representative of the estate of Thelma A. Mendel, in his capacity as trustee of the Thelma A. Mendel Lifetime Trust, Plaintiff–Appellee,

v.

MORGAN KEEGAN & COMPANY, INC., Defendant–Appellant.

No. 15–12801
Non–Argument Calendar

United States Court of Appeals, Eleventh Circuit.

Date Filed: 03/23/2016

Charles Nelson Gill, Richard Hamilton Gill, Copeland Franco Screws & Gill, PA, Montgomery, AL, Richard S. Frankowski, Whatley Drake & Kallas, LLC, Birmingham, AL, for Plaintiff–Appellee.

Peter Sean Fruin, Kathryn Roe Eldridge, Elizabeth Prim Escalona, Maynard Cooper & Gale, PC, Birmingham, AL, for Defendant–Appellant.

Before WILLIAM PRYOR, MARTIN and ANDERSON, Circuit Judges.

PER CURIAM:

Morgan Keegan & Company, Inc. ("Morgan Keegan") appeals the district court's decision to vacate an arbitral award

on the ground that a member of the arbitration panel displayed "evident partiality" toward Morgan Keegan, as that term is used in the Federal Arbitration Act ("FAA"), 9 U.S.C. § 1 et seq. Morgan Keegan argues that the district court wrongly relied on an Alabama Supreme Court decision interpreting the relevant FAA provision, instead of this Court's binding precedent. It asserts that vacatur was improper under the correct standard. We agree, and therefore reverse the district court and remand for further proceedings.

## I.

Jake Mendel, on behalf of a trust account opened by Thelma Mendel and an estate account opened after she passed away, invested in certain mutual funds ("the RMK Funds") through Morgan Keegan. The RMK Funds included investments in risky asset-backed securities that lost significant value during the financial crisis. As a result, Mendel brought several claims against Morgan Keegan. These claims were contractually subject to binding arbitration before the Financial Industry Regulatory Authority ("FINRA").

In accordance with FINRA rules, each party received three lists of ten potential arbitrators, as well as disclosure reports that included background information on each arbitrator (such as his or her employment history). Each party was allowed to strike up to four arbitrators per list and rank the remaining ones. John Allgood and two other arbitrators were chosen for the panel. Allgood is a lawyer employed by the law firm of Ford & Harrison, LLP, a fact he disclosed in his arbitrator disclosure report. He also answered "no" to the question whether he "had any professional or social relationships with any party in this proceeding or the firm for which they work."

The parties' underlying dispute was arbitrated in May 2013. The arbitration panel unanimously decided to award Mendel $279,500.31 in compensatory damages. Mendel alleges that this amount represents less than a tenth of what he actually lost from investing in the RMK Funds. After this decision issued, Mendel claims that he discovered a potential conflict of interest: Morgan Keegan had been represented by Ford & Harrison in unrelated matters. As evidence of this relationship, Mendel offered printouts from Martindale Hubbell, Lexis.com, and Lawyers.com listing Morgan Keegan as a client of Ford & Harrison.

Mendel challenged the arbitral award in Alabama state court pursuant to Alabama Rule of Civil Procedure 71B.[1] As relevant here, he sought vacatur of the award and a new arbitration on the ground that Allgood's alleged conflict demonstrated "evident partiality" toward Morgan Keegan under § 10(a)(2) of the FAA. See 9 U.S.C. § 10(a)(2) (allowing vacatur "where there was evident partiality or corruption in the arbitrators"). Morgan Keegan removed the case to federal court, invoking the district court's diversity jurisdiction. See 28 U.S.C. § 1332(a)(1).

At the outset, the district court expressed uncertainty about both its subject matter jurisdiction and whether Alabama law governed the dispute. This uncertainty may have been compounded by some equivocal statements that Morgan Keegan's lawyer made at a hearing to address whether removal was proper. For instance, the lawyer stated that "[t]he grounds for vacatur, when we're talking about grounds, are solely those under the FAA," but she also told the district court that "the Ala-

---

1. This rule creates a state mechanism for appealing an arbitral award.

bama substantive common law comes into play in looking at those grounds." Counsel later seemed to confirm that "if the [Alabama] Supreme Court holds it, we get to use it." The district court proceeded under the impression that Alabama common law would control its interpretation and application of the FAA.

The parties filed cross motions for summary judgment. Rather than rule on these motions, though, the district court decided to await the resolution of an appeal pending in the Alabama Supreme Court that concerned whether § 10(a)(2)'s evident partiality standard requires a showing that the arbitrator actually knew of the conflict. See Mun. Workers Comp. Fund, Inc. v. Morgan Keegan & Co., Inc. ("Municipal Workers"), 190 So.3d 895 (Ala. 2015). The Alabama Supreme Court ultimately held that a showing of actual knowledge is not required. Id. at 923–24. In doing so, it considered and rejected this Court's interpretation of § 10(a)(2). See id. at 918–21, 923–24 (rejecting Gianelli Money Purchase Plan & Tr. v. ADM Inv'r Servs., Inc. ("Gianelli"), 146 F.3d 1309 (11th Cir. 1998), which requires a showing of actual knowledge, see id. at 1309–10).

The district court treated Municipal Workers as controlling. Though it noted that Mendel had not shown that Allgood actually knew of the conflict, the court granted Mendel's motion for summary judgment and vacated the arbitral award under § 10(a)(2) because Municipal Workers made it "clear that a party can successfully challenge an award without showing actual bias by an arbitrator and without showing a knowing non-disclosure of a fact that might call his impartiality into question." The district court reasoned that the state court's interpretation of the FAA applied under Erie R.R. Co. v. Tompkins ("Erie"), 304 U.S. 64, 58 S.Ct.

817, 82 L.Ed. 1188 (1938). Morgan Keegan timely appealed.

## II.

In considering a district court's order to vacate an arbitral award, we review the district court's legal conclusions de novo and its factfindings for clear error. Offshore Marine Towing, Inc. v. MR23, 412 F.3d 1254, 1255 (11th Cir. 2005). Generally, "courts may vacate an arbitrator's decision only in very unusual circumstances." Oxford Health Plans LLC v. Sutter, —— U.S. ——, 133 S.Ct. 2064, 2068, 186 L.Ed.2d 113 (2013) (quotation omitted). Section 10(a)(2) of the FAA describes one such circumstance: "where there was evident partiality or corruption in the arbitrators." 9 U.S.C. § 10(a)(2).

This Court has interpreted the FAA's evident partiality standard. See Lifecare Int'l, Inc. v. CD Med., Inc., 68 F.3d 429, 433–34 (11th Cir. 1995); Gianelli, 146 F.3d at 1312. According to our precedent, "the mere appearance of bias or partiality is not enough to set aside an arbitration award." Lifecare Int'l, Inc., 68 F.3d at 433. Instead, the evident partiality standard is satisfied "only when either (1) an actual conflict exists, or (2) the arbitrator knows of, but fails to disclose, information which would lead a reasonable person to believe that a potential conflict exists." Gianelli, 146 F.3d at 1312. The arbitrator must actually know of the potential conflict—failure to investigate for potential conflicts is insufficient to show evident partiality. See id.

Under the Erie doctrine, federal courts exercising diversity jurisdiction usually must apply state substantive law. See Erie, 304 U.S. at 78, 58 S.Ct. at 822. There is an exception, though, for "matters governed by the Federal Constitution or by acts of Congress." Id. As we have noted, it is "erroneous" to speak of Erie "as automatically applying in cases in which jurisdiction

is based on diversity of citizenship," because Erie "is inapplicable to those issues effectively governed by federal law, even if jurisdiction rests solely on diversity of citizenship." First S. Fed. Sav. & Loan Ass'n of Mobile, Ala. v. First S. Sav. & Loan Ass'n of Jackson Cty., 614 F.2d 71, 73 (5th Cir. 1980) (per curiam).[2] We are not bound by a state court's interpretation of federal law. See Venn v. St. Paul Fire & Marine Ins. Co., 99 F.3d 1058, 1064 (11th Cir. 1996).

### III.

■ The district court erred by treating Municipal Workers, an Alabama Supreme Court decision, as binding precedent that trumped this Court's interpretation of § 10(a)(2) of the FAA. While the Alabama Supreme Court was entitled to interpret the FAA for the benefit of its lower state courts,[3] it had no power to contravene our interpretation in the federal courts as well.

The proper interpretation of § 10(a)(2) of the FAA falls squarely within the above described exception to Erie—it is a matter governed by an act of Congress. See Erie, 304 U.S. at 78, 58 S.Ct. at 822. We have implicitly recognized as much by repeatedly applying our own binding interpretation of § 10(a)(2) in diversity cases. See, e.g., Johnson v. Directory Assistants Inc., 797 F.3d 1294, 1299–1301 (11th Cir. 2015) (per

curiam); Univ. Commons–Urbana, Ltd. v. Universal Constructors Inc., 304 F.3d 1331, 1338–39 (11th Cir. 2002). Johnson is particularly on-point: The parties in Johnson had arbitrated a contract dispute, after which the losing party moved to vacate the award in Alabama state court because the arbitrator was allegedly biased within the meaning of § 10(a)(2). Johnson, 797 F.3d at 1296–98. The case was removed to federal court based on diversity jurisdiction, and the district court vacated the award. Id. at 1298. Although the Alabama Supreme Court had decided Municipal Workers months earlier, we applied binding Circuit precedent interpreting § 10(a)(2)'s evident partiality standard. Id. at 1299–1300. We did not mention Municipal Workers. Thus, in nearly identical circumstances, we applied our own precedent interpreting § 10(a)(2) rather than deferring to the Alabama Supreme Court's interpretation. The district court should have done the same here.[4]

■ Turning to the application of our evident partiality standard to the facts of this case, we conclude that Mendel has not met the standard for purposes of summary judgment. There are two ways to show evident partiality: (1) an actual conflict, or (2) knowing nondisclosure of a potential conflict. Gianelli, 146 F.3d at 1312. Mendel did not argue before the district court that

---

2. In Bonner v. City of Prichard, 661 F.2d 1206 (11th Cir. 1981) (en banc), we adopted as binding precedent all decisions of the former Fifth Circuit handed down before October 1, 1981. Id. at 1209.

3. Our system of federalism allows for parallel state and federal interpretations of federal law. See Casale v. Tillman, 558 F.3d 1258, 1260 (11th Cir. 2009) (per curiam). As Mendel points out, this risks divergent outcomes based on whether a case is heard in state court or a federal court exercising diversity jurisdiction. But that's simply a reality of the exception built into Erie. See RAR, Inc. v.

Turner Diesel, Ltd., 107 F.3d 1272, 1276 n.1 (7th Cir. 1997).

4. Morgan Keegan's equivocal statements to the district court about what law governs didn't change the proper legal standard, as Mendel now argues. Even if the statements were clear stipulations, such stipulations wouldn't be binding. See Noel Shows, Inc. v. United States, 721 F.2d 327, 330 (11th Cir. 1983) (per curiam) ("A stipulation ... as to questions of law is not binding on the trial court."). Morgan Keegan could not change the law the district court was bound to apply.

Allgood was actually biased against him; instead, he asserted that this is a nondisclosure case subject to a lower standard of proof. For the first time on appeal, he says "it is clear that [Allgood's] law firm representing Morgan Keegan during the arbitration is an actual conflict." We generally do not consider arguments raised for the first time on appeal in civil cases. Ledford v. Peeples, 657 F.3d 1222, 1258 (11th Cir. 2011). Particularly because the evident partiality inquiry is "fact-intensive," Gianelli, 146 F.3d at 1313, we decline to consider Mendel's actual-conflict argument for the first time on appeal. See Access Now, Inc. v. Sw. Airlines Co., 385 F.3d 1324, 1331–32 (11th Cir. 2004).

Thus, in order to warrant vacatur under § 10(a)(2), Mendel was required to show that Allgood "kn[ew] of, but fail[ed] to disclose" the potential conflict. Gianelli, 146 F.3d at 1312. Mendel has not presented any evidence to this effect. In fact, the only record evidence of Allgood's potential conflict consists of third-party printouts listing Morgan Keegan as a client of Ford & Harrison. As the district court recognized, none of this demonstrates Allgood's actual knowledge of the potential conflict. And this Court has clearly stated that arbitrators don't have a duty to investigate potential conflicts. See Gianelli, 146 F.3d at 1312.

Applying the controlling standard, it's apparent that Mendel has not established evident partiality within the meaning of § 10(a)(2) of the FAA. We therefore reverse and remand the district court's decision.

**REVERSED and REMANDED.**