[PUBLISH]

In the

# United States Court of Appeals

### For the Eleventh Circuit

_____

No. 23-10691

_____

DAVID EFRON,

Plaintiff-Appellant,

*versus*

MADELEINE CANDELARIO,
MICHELLE PIRALLO DI CRISTINA,

Defendants-Appellees.

_____

Appeal from the United States District Court
for the Southern District of Florida
D.C. Docket No. 1:22-cv-21452-JEM

_____

2                    Opinion of the Court                    23-10691

Before WILSON, GRANT, and LAGOA, Circuit Judges.

LAGOA, Circuit Judge:

David Efron appeals the dismissal of his complaint, in which he asserted four claims: (1) deprivation of procedural due process under 42 U.S.C. § 1983 (Count I); (2) conspiracy to deny civil rights under § 1983 (Count II); civil conspiracy (Count III); and unjust enrichment (Count IV). On appeal, Efron contends that the district court erred in finding that the *Rooker-Feldman* doctrine bars his claims from federal review.[1] After careful consideration of the parties' arguments and with the benefit of oral argument, we conclude that the *Rooker-Feldman* doctrine bars Efron's claims, and we affirm the district court's dismissal of Efron's complaint for lack of subject matter jurisdiction.[2]

## I.    FACTUAL AND PROCEDURAL BACKGROUND

David Efron and Madeleine Candelario filed for divorce in Puerto Rico. At some point during the dissolution litigation, Efron was ordered to pay Candelario $50,000 per month as an advance towards the marital asset distribution, but those payments ceased

---

[1] The doctrine takes its name from two Supreme Court decisions: *Rooker v. Fidelity Trust Co.*, 263 U.S. 413 (1923), and *District of Columbia Court of Appeals v. Feldman*, 460 U.S. 462 (1983).

[2] In the alternative, Efron argues that *Rooker-Feldman* does not bar his § 1983 claims because they fall (or should fall) under an extrinsic fraud exception to the doctrine. As Efron acknowledges, this Circuit has never recognized such an exception, and we decline to do so here.

when the divorce was finalized.  Thereafter, Candelario began a romantic relationship with a Puerto Rico Court of Appeals Judge, Cordero.

Around the same time, another Puerto Rico Court of Appeals Judge, Aponte, had a problem: his brother, Jorge Aponte Hernandez, had been charged in Puerto Rico with public corruption. Efron alleges that, during the pendency of his marriage property litigation and Mr. Jorge Aponte's criminal case, Candelario, her attorney Michelle Pirallo Di Cristina ("Pirallo"), Judge Cordero, and Judge Aponte met and agreed to a quid pro quo: Judge Cordero would make sure Judge Aponte's brother went free, and Judge Aponte would rule in Candelario's favor on a new motion to reinstate the $50,000 monthly payments.  According to Efron, the scheme succeeded.

Mr. Jorge Aponte moved to amend his indictment, seeking to remove some of the language alleging his level of intent.  The trial court denied the motion, but the Court of Appeals—including Judge Cordero—reversed and ruled in Aponte's favor.  At the ensuing criminal trial, Mr. Aponte was acquitted by the trial judge for a lack of evidence of wrongdoing.[3]  As for Candelario, she moved for the $50,000 payments to resume and to apply retroactively to an earlier date with interest.  In a three-judge panel opinion authored by Judge Aponte, the Court of Appeals granted her request. *See Candelario del Moral v. Efron*, Nos.     KLCE0500605,

---

[3] Mr. Aponte later filed a lawsuit claiming malicious prosecution, but the jury found in favor of the state prosecutors.

KLCE0500616, 2006 WL 536597 (P.R. Cir. Jan. 31, 2006), as amended, *Candelario del Moral v. Efron*, Nos. KLCE0500605, KLCE0500616, 2006 WL 1044530 (P.R. Cir. Feb. 16, 2006).

According to Efron, Judge Aponte's opinion finalized the alleged fraudulent scheme.  Indeed, Efron maintains that the "scheme was wildly successful" because both parties got what they wanted: Mr. Aponte was declared not guilty and Candelario has received approximately $7 million from Efron.

Since Judge Aponte's decision, the parties have been embroiled in a series of disputes concerning payment of the advancements.  After paying around $400,000 to Candelario, Efron refused to make further monthly payments.  In response, Candelario has garnished Efron's salary and attached his bank and brokerage house accounts, as well as other assets.  Efron asserts that Candelario's repeated legal victories, which all rely upon the Judge Aponte decision, are proof that "the scheme is . . . still in operation to this very day."  In addition to asserting that he has "no ability to overturn the [Aponte] decision" Efron also alleges that Candelario has intentionally delayed the property distribution case for twenty years—seeking "seemingly endless continuances [and] . . . recusal of judges" with the goal of continuing to receive the $50,000 monthly "advance payments."

On May 10, 2022, Efron filed a complaint in federal district court against Candelario and her attorney, Pirallo.  Efron asserted four claims: (1) deprivation of his constitutional procedural due process rights under 42 U.S.C. § 1983 (Count I); (2) conspiracy to

deny civil rights under § 1983 (Count II); civil conspiracy (Count III); and unjust enrichment (Count IV). In his first three claims, Efron alleged that as a direct and proximate consequence of the defendants' actions he suffered monetary damages in an amount not less than $7 million. His fourth claim asserted his entitlement to return of the money so far received by Candelario and Judge Cordero (who, while not a defendant, allegedly benefitted from the funds as Candelario's live-in boyfriend). And at the end of his recitation of facts, Efron asserted that, until his due process rights "are restored by the abrogation of the Aponte decision, Candelario and Pirallo will continue to have free reign to use the corrupt orders in that case to enlist the courts of Florida and Puerto Rico as unwitting co-conspirators in their illegal scheme."

Candelario moved to dismiss for lack of subject matter jurisdiction pursuant to Federal Rule of Civil Procedure 12(b)(1) and for failure to state a claim under 12(b)(6). She argued (1) that the court lacked subject-matter jurisdiction over the action under the *Rooker-Feldman* doctrine, (2) that the action was time-barred, and (3) that Efron had failed to state a cause of action under § 1983. She asked that Efron's claim be dismissed with prejudice.

On January 5, 2023, the district court granted in part and denied in part Candelario's motion to dismiss and dismissed the complaint without prejudice, finding that it had no subject matter jurisdiction over Efron's claims. In short, the district court noted that the *Rooker-Feldman* doctrine bars federal judicial review of claims that are "inextricably intertwined" with a state court judgment

such that granting relief would "effectively nullify" the state court judgment, or where claims may succeed "only to the extent that the state court wrongly decided the issues."[4]  The court concluded that Efron's claims are "inextricably intertwined" with the Puerto Rico court's judgment and thus prohibited by *Rooker-Feldman*.  The court also rejected Efron's argument that his claim fell under a fraud exception to the *Rooker-Feldman* doctrine.

Having dismissed Efron's complaint on jurisdictional grounds, the district court declined to reach the remainder of Candelario's arguments.

Efron timely appealed.

## II.    STANDARD OF REVIEW

When evaluating a district court's resolution of a Rule 12(b)(1) motion to dismiss for lack of subject matter jurisdiction, we review legal conclusions de novo and findings of fact for clear error.[5]  *Glob. Marine Expl., Inc. v. Republic of France*, 33 F.4th 1312, 1317 (11th Cir. 2022).

---

[4] Here, the district court relied on our decisions in *Casale v. Tillman*, 558 F.3d 1258, 1260 (11th Cir. 2009), *Powell v. Powell*, 80 F.3d 464, 467 (11th Cir. 1996), and *Goodman ex rel. Goodman v. Sipos*, 259 F.3d 1327, 1332 (11th Cir. 2001).

[5] The parties in this case dispute the kind of jurisdictional challenge presented here.  A motion to dismiss for lack of subject matter jurisdiction under Federal Rule of Civil Procedure 12(b)(1) can be based on either a "facial" or a "factual" challenge to the complaint.  *See McElmurray v. Consol. Gov't*, 501 F.3d 1244, 1251 (11th Cir. 2007).  In a facial challenge, a court must consider the allegations of the plaintiff's complaint as true and merely "look and see if [the] plaintiff has sufficiently alleged a basis of subject matter jurisdiction."  *Lawrence v.*

## III.   ANALYSIS

On appeal, Efron argues that the district court erred in holding that the *Rooker-Feldman* doctrine deprived it of jurisdiction over Efron's complaint.  According to Efron, the doctrine does not apply because he does not ask that the district court overturn the state court opinion but rather seeks compensatory damages.

The *Rooker-Feldman* doctrine "is a jurisdictional rule that precludes the lower federal courts from reviewing state court

---

*Dunbar*, 919 F.2d 1525, 1529 (11th Cir. 1990) (alteration in original and quotation marks omitted).  By contrast, a factual attack challenges "the existence of subject matter jurisdiction in fact, irrespective of the pleadings, and matters outside the pleadings, such as testimony and affidavits are considered."  *Id*.

Though Appellees characterized their claim to the district court as a factual attack on the court's jurisdiction, the court found that they brought a facial challenge because "the universe of facts upon which the Motion relies is contained in the Complaint and attachments thereto."  On appeal, Efron adopts the district court's position, asserting that Appellees brought a facial challenge and that the district court was thereby required to accept Efron's facts as true.  Pointing to a string of district court opinions, Appellees respond that *Rooker-Feldman* is necessarily a factual attack on jurisdiction.  But the orders labeling *Rooker-Feldman* as a factual challenge only state (or can be traced to other district court orders stating) that the specific challenge before them was a factual attack.  *See e.g. Ellis v. U.S. Bank, N.A.*, No. 16-CV-1750, 2017 WL 477707, at *2 (M.D. Fla. Feb. 6, 2017); *O'Neal v. Bank of Am., N.A.*, No. 11-CV-107, 2012 WL 629817, at *3 (M.D. Fla. Feb. 28, 2012); *Dean v. Wells Fargo Home Mortg.*, No. 10-CV-564, 2011 WL 1515106, at *2 (M.D. Fla. Apr. 21, 2011).  Thus, they do not support the proposition that all *Rooker-Feldman* challenges are inherently factual attacks.  In any event, because the Appellees did not present any outside evidence challenging the facts underlying Efron's complaint, the difference is largely academic here, and we need not decide it.

judgments." *Alvarez v. Att'y Gen. of Fla.*, 679 F.3d 1257, 1262 (11th Cir. 2012). The rule is not prudential but rather "follows naturally from the jurisdictional boundaries that Congress has set for the federal courts. First, federal district courts are courts of original jurisdiction" which "generally cannot hear appeals [a]nd second, only the Supreme Court can 'reverse or modify' state court judgments." *Behr v. Campbell*, 8 F.4th 1206, 1210 (11th Cir. 2021) (citing 28 U.S.C. § 1257(a)). Under *Rooker-Feldman*, "a party losing in state court is barred from seeking what in substance would be appellate review of the state court judgment in a United States District Court, based on the losing party's claim that the state judgment itself violates the loser's federal rights." *Johnson v. De Grandy*, 512 U.S. 997, 1005–06 (1994).[6]

Following the Supreme Court's direction, we have repeatedly emphasized that the *Rooker-Feldman* doctrine is "limited" and "clearly narrow." *Behr*, 8 F.4th at 1211. It does not prevent a "district court from exercising subject-matter jurisdiction simply because a party attempts to litigate in federal court a matter previously litigated in state court." *Nicholson v. Shafe*, 558 F.3d 1266, 1274 (11th Cir. 2009) (quoting *Exxon Mobil Corp. v. Saudi Basic Indus. Corp.*, 544 U.S. 280, 293 (2005)). Nor does *Rooker-Feldman* "block claims that 'require some reconsideration of a decision of a state court' if the plaintiff presents 'some independent claim, albeit one

---

[6] *Rooker-Feldman* likewise applies to Puerto Rican court judgments. *Federacion de Maestros de Puerto Rico v. Junta de Relaciones del Trabajo de Puerto Rico*, 410 F.3d 17 (1st Cir. 2005); *see also* 28 U.S.C. § 1258.

that denies a legal conclusion that a state court has reached in a case to which he was a party.'" *Behr*, 8 F.4th at 1212 (quoting *Target Media Partners v. Specialty Mktg. Corp.*, 881 F.3d 1279, 1288 (11th Cir. 2018)). Indeed, we have stated that *Rooker-Feldman* "will almost never apply." *Id.*

But almost is not never. The question is whether the case has been "brought by state-court losers complaining of injuries caused by state-court judgments rendered before the district court proceedings commenced and inviting district court review and rejection of those judgments." *Id.* (quoting *Exxon Mobil*, 544 U.S. at 284). This requires a court to determine whether the plaintiff seeks relief from an injury "caused by the judgment itself" or whether he seeks damages for some independent source of injury. *Id.* If the source of the plaintiff's injury is the state-court judgment itself, then *Rooker-Feldman* applies. *See also D.C. Ct. of Appeals v. Feldman*, 460 U.S. 462, 486–87 (1983) (finding that *Rooker-Feldman* barred a plaintiff's claim that the state court had acted "arbitrarily and capriciously" but not the plaintiff's claim that the underlying state rule was unconstitutional); *Alvarez*, 679 F.3d at 1263 (distinguishing a permissible challenge to the underlying constitutionality of a procedure from a barred challenge to the state court's application of that procedure).

Further, as we explained in *Behr*, the *Rooker-Feldman* doctrine does not cease to operate simply because the plaintiff requests something other than the vacatur of a state decision. Whether a state court judgment caused the plaintiff's injury remains the

question for a federal court regardless of the form in which the plaintiff brings his or her claims. *Behr*, 8 F.4th at 1211. Thus, *Rooker-Feldman* "bars all appeals of state court judgments—whether the plaintiff admits to filing a direct appeal of the judgment or tries to call the appeal something else."[7]  *Id.*

### i.    A Claim-By-Claim Analysis

As we explained in *Behr*, a court should follow a claim-by-claim approach when determining whether *Rooker-Feldman* bars a plaintiff's claims from review in a federal district court. *Id.* at 1213. "The question isn't whether the whole complaint seems to challenge a previous state court judgment, but whether resolution of each individual claim requires review and rejection of a state court judgment." *Id.* We thus consider each of Efron's four claims in turn.

---

[7] When the Supreme Court issued its decision in *Feldman*, it noted that Feldman's two claims—that the federal court overturn the state court's judgment and that the federal court declare that the state court acted "arbitrarily and capriciously"—were "inextricably intertwined." *Feldman*, 460 U.S. at 486–87. In *Behr* we explained that "whether a claim is 'inextricably intertwined' with a state court judgment . . . is merely a way of ensuring that courts do not exercise jurisdiction over the appeal of a state court judgment simply because the claimant does not call it an appeal of a state court judgment." *Behr*, 8 F.4th at 1212. We recognize that lower courts have since taken to relying on the formulation of "inextricably intertwined" that we provided in *Casale*. *See, e.g.*, *Efron v. Candelario*, No. 22-21452-CIV, 2023 WL 2394592, at *4 (S.D. Fla. Feb. 3, 2023). However, our instruction in *Behr* was to avoid relying on any such standard, and to instead prioritize simply asking whether a plaintiff's claim requires a federal district court to review and reject a state court decision. *See Behr*, 8 F.4th at 1211–12.

In his first count, Efron claimed deprivation of procedural due process rights under § 1983, alleging that the Appellees had recruited Judge Aponte to issue "a corrupt decision" on behalf of Candelario, thereby denying "Efron his right to have the property distribution case heard before a neutral tribunal." Efron requested monetary damages for injury to his business and property as a result of the corrupt decision. On appeal, Efron asserts that neither this claim nor any of his others seek to "reverse and nullify" the Puerto Rican court's judgment. He argues that his allegations "specify a claim for damages independent of the standing Aponte decisions, based on the factual allegations that the two Appellees procured and then utilized state court judgments to obtain by means of fraud and misrepresentation not less than $7,000,000 that should be compensated for in damages or disgorgement." Efron seeks to distinguish his claims from those barred under *Rooker-Feldman* on the grounds that he does not request relief from an injury caused solely by the state court's decision, but rather seeks damages from third party actions.

But Efron's efforts to distinguish his claim are unpersuasive and amount to filing a direct appeal of the state court judgment while simultaneously trying to "call the appeal something else." *Behr*, 8 F.4th at 1211. Although Efron does not explicitly ask us to overturn the state court's judgment, Efron asks us to find that the court's determination that Candelario is entitled to $50,000 a year is the result of corruption, which amounts to the same thing. *See id.* (recognizing that a request that a district court overturn a state court judgment and a request that the district court declare that the

state court acted "arbitrarily and capriciously" by denying the plaintiff's state claim were "one and the same"); *see also Alvarez*, 679 F.3d at 1263 (concluding that a plaintiff's claim that the state court had "arbitrarily ignored material facts" to be a request for the district court to review and reject the state court judgment, which was barred by *Rooker-Feldman* doctrine).  Efron essentially conceded as much in his complaint, where he alleged that his due process rights can only be restored "by the abrogation of the Aponte decision." Efron therefore does not seek relief from an injury by a third party or challenge the constitutionality of a state court rule, distinguishable from the state court's application of that rule.  *See Feldman*, 460 U.S. at 482–87.  Instead, Efron's claim seeks relief from injuries caused by the state-court judgment because the claim at "its heart challenges the state court decision itself"—the money adjudicated to Candelario by the Aponte decisions—"and not the statute or law which underlies that decision."  *Behr*, 8 F.4th at 1211.  In sum, Efron's due process challenge "boils down to a claim that the state court judgment itself caused him constitutional injury."  *Alvarez*, 679 F.3d at 1263.

The rest of Efron's claims are similarly barred by *Rooker-Feldman*.  Count II, a "Conspiracy to Deny Civil Rights Under 42 U.S.C. § 1983," alleges that Candelario and Pirallo participated in a conspiracy with Judges Aponte and Cordero who, acting under the color of state law, agreed to "deny Efron his constitutional rights protected by the Due Process Clause of the Fourteenth Amendment to be heard in an impartial forum and to have equal and fair access to the courts."  Efron alleges that the conspirators' objective

was to "deny Efron his due process rights so that he could be wrongfully ordered to pay" and seeks $7,000,000 in injury to his business and property as a result of that conspiracy. Count III asserts a claim for civil conspiracy and focuses on the same set of facts. In particular, Efron alleges that Candelario and Pirallo agreed to a quid pro quo between Judges Cordero and Aponte and that the scheme "continues to the present day through Candelario's relentless pursuit of Efron in the courts of Florida and Puerto Rico for money ostensibly owed to Candelario based on Judge Aponte's corruptly procured rulings." Efron seeks the same damages under Count III as Count II. Count IV, which asserts a claim for unjust enrichment, alleges that Candelario and Pirallo were paid money "to which they are not entitled" as a result of the Aponte decisions, resulting in their unjust enrichment at Efron's expense. Efron demanded a "return of the money received" by the Appellees.

Like Count I, Counts II, III, and IV tick all the *Rooker-Feldman* boxes. At heart, they challenge the result of the Aponte decisions themselves, seeking to nullify the decisions' effect by mandating the return of the money the Aponte decisions ordered Efron to pay and explicitly seeking a finding that the Aponte decisions were "wrongful," "corruptly procured" and did not entitle the Appellees to the money they were paid. *See Behr*, 8 F.4th at 1211. In short, Counts II–IV require a district court to "review" and "reject" the state court decision.

Efron argues that his claims are not covered by *Rooker-Feldman* because he seeks monetary damages solely as compensation

for the Appellees' past wrongdoing and thus articulates a claim for relief "independent" of the Aponte decisions. He maintains that the district court erred by (1) principally focusing on the interrelationship of the federal claim to the litigation in the state court, (2) giving no weight to the exclusive damages remedy sought, (3) giving no weight to the fact that the complaint sought no relief to vacate or reverse the state-court judgment, and (4) overlooking the fact that damages could be awarded without nullifying the state court judgment. These arguments fail to persuade.

Efron is correct that a plaintiff's claim for relief does matter. *See id.* at 1214. In *Behr*, we explicitly rejected a proposition from *Goodman* that *Rooker-Feldman* "focus[es] on the federal claim's relationship to the issues involved in the state court proceeding," to the exclusion of "the type of relief sought by the plaintiff." *Id.* (quoting *Goodman*, 259 F.3d at 1333). But the claim for relief, alone, is not determinative: the question is still whether the substance—if not the form—of a plaintiff's claim requires a district court to "review" and "reject" a state court judgment. *Id.* at 1211. As we said in *Behr*, a request that a state court decision be invalidated is equivalent to a request that the state court be declared to have acted "arbitrarily and capriciously." *Id.* In this case, although Efron does not ask us to overturn the state court's judgment, there is no distinguishing between the damages that the judges' alleged constitutional violations caused Efron and the state court's disposition of Efron's case. Efron essentially claims that the state court judgment *is* the constitutional issue, and his request for damages would not only explicitly negate the Aponte decision's effect to date but would

also (as he intends) "deter [the Aponte decision's] future use." Indeed, the complaint at issue here was "brought by [a] state-court loser[] complaining of injuries caused by state-court judgments rendered before the district court proceedings commenced and inviting district court review and rejection of those judgments." *Behr*, 8 F.4th at 1212 (quoting *Exxon Mobil*, 544 U.S. at 284). We thus conclude that Efron's claims are barred under *Rooker-Feldman* because they amount to a request that the district court review and reject the state court judgment.[8]

## IV.   CONCLUSION

For the foregoing reasons, we affirm the district court's dismissal of Efron's complaint for lack of subject matter jurisdiction.

**AFFIRMED.**

---

[8] Efron alleges that the district court made several other errors in its analysis. Because our review of subject matter jurisdiction is dispositive, we need not address the other errors Efron alleges.