[DO NOT PUBLISH]


IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

_____

No. 20-10761
Non-Argument Calendar

_____

D.C. Docket No. 4:19-cv-00197-AW-HTC


JENS P. HANSEN,

Plaintiff - Appellant,

versus

FLORIDA COMMISSION OF OFFENDER REVIEW,

Defendant - Appellee.

_____

Appeal from the United States District Court
for the Northern District of Florida

_____

(November 10, 2020)

Before WILSON, JILL PRYOR and BRASHER, Circuit Judges.

PER CURIAM:

Jens Hansen, a state prisoner proceeding *pro se*, appeals the dismissal of his 42 U.S.C. § 1983 complaint against the Florida Commission of Offender Review. Because the *Rooker-Feldman* doctrine bars his claims, we affirm.

## I.    BACKGROUND

Hansen filed an amended 42 U.S.C. § 1983 complaint alleging that the Commission arbitrarily and illegally denied him an effective parole release date ("EPRD") and delayed his presumptive parole release date ("PPRD") for another seven years, all in violation of his due process and equal protection rights under the Fourteenth Amendment to the United States Constitution.

The complaint alleged the following facts.  In 1989 Hansen began serving a life sentence with eligibility for parole after 25 years.  In April 2013, the Commission set Hansen's PPRD to be August 31, 2017.  In May 2017, a parole examiner interviewed Hansen to establish an EPRD—presumably a firmer release date than the PPRD.  The examiner told Hansen he would recommend that his EPRD be August 31.  The following week, the examiner told Hansen that "the interview was a mistake"; he needed to interview Hansen again.  Doc. 20 at 7.[1]  At the second interview, the examiner told Hansen his "release plan was as good as any he had seen."  *Id.* at 7–8 (emphasis omitted).  Despite this, the examiner submitted a report calling Hansen's release plan "unsatisfactory" and

---

[1] "Doc." numbers refer to the district court's docket entries.

recommending that the Commission put off further consideration of Hansen's release for seven more years because, the examiner falsely represented, Hansen had failed to show remorse for his crime. *Id.* at 8. The complaint alleged that some unidentified person had ordered the examiner to change his mind.

In July, the Commission held a hearing at which it declined to set an EPRD and instead ordered an "Extraordinary Review." *Id.* Following that review process, which culminated in a report that allegedly contained a "fabricated misquotation" about Hansen's crime of conviction, the Commission "suspend[ed] the PPRD, and withheld further review for 7 years." *Id.* at 8, 11. The complaint alleged that the Commission's decision was based on the false assertions that Hansen lacked remorse for his crime and had only minimally participated in "self-betterment programs." *Id.* at 9. The complaint further alleged that the Commission ignored or destroyed evidence that Hansen was remorseful and in fact had participated in several self-improvement programs. The complaint alleged that the Commission's decision ran afoul of its own rules and Florida law.

The complaint asserted 10 numbered "claims" for relief, all of which were framed as Fourteenth Amendment due process or equal protection violations. *Id.* at 11 (capitalization omitted). The claims were based on allegations of: (1) the examiner's misrepresentations to Hansen and the Commission; (2) the Commission's destruction of or failure to consider evidence favorable to Hansen's

3

timely release; (3) the Extraordinary Review report's misquote of Hansen's role in the crime of conviction; (4) the cumulative impact of the first three claims; (5) the Commission's numerous arbitrary decisions; (6) the Commission's failure to provide an evidentiary basis for its decision to deny Hansen timely release; (7) the Commission's "recycled prejudice of previous objective standards" that prejudiced Hansen in this proceeding; (8) the Commission's unlawful decision to set Hansen's next parole review for 7 years later rather than 1 year—an "*ex post facto* prejudice of law" in addition to a due process violation; (9) Hansen's "protected liberty interest" in parole; and (10) the Commission's failure to inform Hansen of accusations against him and reliance on secret information to prejudice him. *Id.* at 11–13. The complaint requested declaratory and injunctive relief. In the section of the complaint form that asked whether he had filed an action in state court "dealing with the same or similar facts/issues involved in this action," Hansen indicated that he had filed a petition for writ of mandamus in state court that involved the "same facts and claims raised here." *Id.* at 5.

The district court ordered Hansen to show cause as to why his complaint should not be dismissed for a lack of jurisdiction under the *Rooker-Feldman* doctrine, given his concession in his complaint that he had filed a petition for writ of mandamus in state court that involved the same facts and claims as the instant case. Hansen responded that his complaint should not be dismissed. He

4

acknowledged that he had filed a petition for writ of mandamus in state court challenging the Commission's decision and attached the state court's order denying his petition but argued that the petition did not bar federal review of his claims because: (1) he raised factual and legal issues in the district court that he did not raise in state court; (2) the state-court petition was against the Commission, whereas his federal complaint was against the Commissioners; (3) the state court failed to address or resolve the claims Hansen presented to it; and (4) the state court "essentially 'rubber-stamped'" the Commission's proposed order and did not hold a full hearing on the matter. Doc. 23 at 3.

As he conceded in response to the district court's show-cause order, Hansen's state-court petition for writ of mandamus challenged the Commission's decision regarding his release. *See* Petition for Writ of Mandamus, *Hansen v. Fla. Comm'n on Offender Rev.*, No. 2018-CA-373 (2d Fla. Cir. Ct.) ("Mandamus Petition").[2] In his Mandamus Petition, Hansen acknowledged that he had no right to parole but asserted that he nonetheless had "Florida and U.S. Constitutional rights to due process and the equal protection of the law in consideration for

---

[2] Hansen's motion to take judicial notice is GRANTED to the extent that this Court takes judicial notice of his state court proceedings in Case No. 2018 CA 373 from the Circuit Court of the Second Judicial Court, in and for Leon County, Florida. Hansen's mandamus petition is found at https://cvweb.leonclerk.com/public/online_services/search_courts/process.asp?report=full_view&caseid=2866603&jiscaseid=&defseq=&chargeseq= under the docket number above.

5

parole." *Id.* at 13. Among other things, Hansen alleged that the examiner (called the Investigator in the Mandamus Petition) focused wrongly on and misrepresented Hansen's remorse, erred in considering old information, and erred by telling Hansen he had a good case for release but later opining that the release plan was unsatisfactory. Hansen argued that the examiner and the Commission failed to follow Florida procedure and to properly state the reasons for their findings, instead ignoring and misrepresenting favorable evidence. He challenged the Commission's use of a "libelous misquote" relating to his involvement in the crime. *Id.* at 29. And, he argued, the Commission defied Florida law by delaying his next release-date determination for seven years.

The state court denied Hansen's petition. Put succinctly, the court determined that Hansen had failed to present evidence to cast doubt on the integrity of the examiner's review, the Commission was within its legal authority to take the actions it took, and the Commission's decision was supported by evidence. Hansen appealed the order to Florida's First District Court of Appeal; that court denied certiorari without opinion and denied rehearing. *See Hansen v. Fla. Comm'n on Offender Review*, 266 So. 3d 1239, 1240 (Fla. Dist. Ct. App. 2019), *reh'g denied*. Hansen thereafter filed his complaint in federal district court.

The district court referred the case to a magistrate judge, who issued a report and recommendation ("R&R"). The R&R recommended that the district court

6

dismiss the case under the *Rooker-Feldman* doctrine because a ruling in favor of Hansen necessarily would require a finding that the state court's decision was erroneous. Over Hansen's objection, the district court adopted the R&R and dismissed the case for lack of jurisdiction. This is Hansen's appeal.

## II.    STANDARD OF REVIEW

We review *de novo* a district court's application of the *Rooker-Feldman* doctrine. *Lozman v. City of Riviera Beach*, 713 F.3d 1066, 1069 (11th Cir. 2013).

## III.    DISCUSSION

On appeal, Hansen argues that the *Rooker-Feldman* doctrine does not bar his claims because his § 1983 complaint does not challenge the state court's merits decision but rather attacks the process the Commission used in determining his eligibility for release. Hansen further argues his federal complaint, unlike his state-court petition, alleged violations of due process and the Ex Post Facto Clause; thus, *Rooker-Feldman* does not bar these two new constitutional law claims because he did not raise them in state court, nor did the state court address them. He also makes passing reference to a First Amendment violation, which he did not raise in his state petition. We disagree with Hansen and hold that the *Rooker-Feldman* doctrine deprives this Court of jurisdiction.

"The *Rooker-Feldman* doctrine eliminates federal court jurisdiction over those cases that are essentially an appeal by a state court loser seeking to relitigate

7

a claim that has already been decided in a state court." *Target Media Partners v. Specialty Mktg. Corp.*, 881 F.3d 1279, 1281 (11th Cir. 2018).[3]  The doctrine "ensure[s] that the inferior federal courts do not impermissibly review decisions of the state courts—a role reserved to the United States Supreme Court." *Id.*  Under the *Rooker-Feldman* doctrine, a federal court is barred from adjudicating a claim that was "either (1) one actually adjudicated by a state court or (2) one inextricably intertwined with a state court judgment." *Id.* at 1286 (internal quotation marks omitted).  A claim is inextricably intertwined "if it asks to effectively nullify the state court judgment, or it succeeds only to the extent that the state court wrongly decided the issues." *Id.* (internal quotation marks omitted).  "A claim that at its heart challenges the state court decision itself—and not the statute or law which underlies that decision—falls within the doctrine because it complains of injuries caused by state-court judgments and invites review and rejection of those judgments." *May v. Morgan Cty.*, 878 F.3d 1001, 1005 (11th Cir. 2017) (alterations adopted) (internal quotation marks omitted).  Thus, the *Rooker-Feldman* doctrine bars as-applied challenges to state courts' application and interpretation of constitutionally valid state law procedures. *Alvarez v. Att'y Gen. for Fla.*, 679 F.3d 1257, 1262–64 (11th Cir. 2012).

---

[3] The doctrine takes its name from two Supreme Court cases, *Rooker v. Fidelity Trust Co.*, 263 U.S. 413 (1923), and *D.C. Court of Appeals v. Feldman*, 460 U.S. 462 (1983).

The *Rooker-Feldman* doctrine does not, however, apply where "the plaintiff had no reasonable opportunity to raise his federal claim in state proceedings." *Powell v. Powell*, 80 F.3d 464, 467 (11th Cir. 1996) (internal quotation marks omitted).[4]

We conclude that the *Rooker-Feldman* doctrine bars Hansen's claims in this case because his federal claims improperly invite review and rejection of the state court judgment on his Mandamus Petition.  Hansen argues that the doctrine is inapplicable because he attacks the Commission's process, not the state court judgment.  But he seeks to attack the Commission's process *as to his case*, not generally.  And his argument overlooks that the state court judgment upheld the

---

[4] The *Rooker-Feldman* doctrine does not apply if the federal action was commenced before the state proceedings ended.  *Nicholson v. Shafe*, 558 F.3d 1266, 1274–75 (11th Cir. 2009).  State proceedings end for purposes of the *Rooker-Feldman* doctrine when:  (1) "the highest state court in which review is available has affirmed the judgment below and nothing is left to be resolved," (2) "the state action has reached a point where neither party seeks further action," such as when the losing party allows the time for appeal to expire, or (3) "the state court proceedings have finally resolved all the federal questions in the litigation, but state law or purely factual questions (whether great or small) remain to be litigated."  *Id.* at 1275 (internal quotation marks omitted).  Here, neither Hansen nor the Commission asserts that the state proceedings were ongoing when Hansen filed suit.  The Florida District Court of Appeal denied Hansen rehearing on April 2, 2019.  When he filed his original complaint in the district court on April 25, Hansen technically had a few days remaining to seek further review of his appeal in the Florida Supreme Court.  *See* Fla. R. App. P. 9.120(b) (requiring a party to seek review in the Florida Supreme Court within 30 days of the day of rendition of the order to be reviewed); Fla. R. App. P. 9.020(h)(1)(B) (providing that a timely filed motion for rehearing tolls the date of rendition of a final order).  But Hansen never sought review in the Florida Supreme Court.  And his amended complaint—the operative complaint here—was filed well outside that 30-day window.  For all of these reasons, we are convinced that "the state action ha[d] reached a point where neither party seeks further action," and therefore the proceedings had ended for purposes of the *Rooker-Feldman* doctrine.  *Nicholson*, 558 F.3d at 1275.

lawfulness of the Commission's process in his case. Asking the federal courts to determine that the Commission's process in his case was unlawful "invites review and rejection of" the state court judgment upholding the Commission's process; thus, the *Rooker-Feldman* doctrine bars our review. *May*, 878 F.3d at 1005 (alterations adopted) (internal quotation marks omitted); *see Target Media Partners*, 881 F.3d at 1286; *Alvarez*, 679 F.3d at 1262–63.

Hansen's argument that his federal complaint raises new constitutional claims not addressed in the state-court litigation does not change this result. As an initial matter, Hansen *did* allege violations of equal protection and due process in his petition for writ of mandamus; thus, they are not new here. Hansen did not expressly allege a violation of the First Amendment in his state-court petition, but he did not do so in his amended federal complaint either. The one arguably new claim in Hansen's federal complaint is one under the Ex Post Facto Clause. Even so, Hansen had a reasonable opportunity to raise any and all federal constitutional challenges to his 2017 parole eligibility determination in his state court litigation, and his failure to do so does not give this Court jurisdiction. *See Casale v. Tillman*, 558 F.3d 1258, 1260 (11th Cir. 2009) (explaining that litigants have a reasonable opportunity to raise claims under federal law in state court because "a state court's interpretation of federal law is no less authoritative than that of the corresponding federal court of appeals" (alterations adopted) (internal quotation

marks omitted)); *Fla. Parole & Prob. Comm'n v. Dornau*, 534 So. 2d 789, 792–93 (Fla. Dist. Ct. App. 1988) (permitting a Florida prisoner to raise federal constitutional claims when challenging parole eligibility in a petition for writ of mandamus); *Tuff v. State*, 732 So. 2d 461, 461–66 (Fla. Dist. Ct. App. 1999) (addressing a challenge based in part on the Ex Post Facto Clause of the U.S. Constitution).  Moreover, for any of Hansen's federal claims to succeed they would have to effectively nullify the state court's judgment that the Commission followed the proper parole procedure under Florida law; the *Rooker-Feldman* doctrine bars such review.  *May*, 878 F.3d at 1005.

## IV.    CONCLUSION

For the reasons set forth above, we affirm the district court's judgment.

**AFFIRMED.**

11