[DO NOT PUBLISH]

In the

# United States Court of Appeals

### For the Eleventh Circuit

_____

No. 19-12852

Non-Argument Calendar

_____

KENNETH CARL GUY,

Plaintiff-Appellant,

*versus*

STATE OF FLORIDA,
PLAZA HOME MORTGAGE,

Defendants-Appellees.

_____

Appeal from the United States District Court
for the Southern District of Florida
D.C. Docket No. 0:19-cv-60120-BB

_____

Before WILSON, JILL PRYOR, and ANDERSON, Circuit Judges.

PER CURIAM:

Kenneth Carl Guy appeals the district court's *sua sponte* dismissal without prejudice under 28 U.S.C. § 1915(e)(2) of his *pro se* 42 U.S.C. § 1983 complaint alleging violations of the Constitution of the United States by the State of Florida and Plaza Home Mortgage. After careful review, we affirm.

## I.

Guy filed a *pro se* complaint against the State of Florida and Plaza. The complaint alleged the following. When Guy purchased his condominium in Oakland Park, Florida, he was given two sets of documents that indicated two different prices, $75,000 and $79,000. This, Guy would later surmise, was an attempted mortgage fraud scheme. Shortly after the purchase was completed, one or more of the orchestrators of the fraud—whose ranks included, unbeknownst to him at the time, the condominium's community association manager—broke into Guy's condominium to change the documents to reflect the higher sale price. When Guy reported the fraud to the community association manager, she told him to keep quiet while the investigation was ongoing, but her actual motivation was to "inform[] everyone . . . that [Guy] was 'crazy' in order to discredit [him] when and if he attempted to inform other members of the association about the mortgage fraud scheme."

Doc. 1 at 3.[1] The manager also contacted Guy's employer, Newsmax Media Inc., to have Guy fired. And the manager told "everyone" in the condominium complex and at Newsmax of a disease Guy was living with, a disclosure Guy did not consent to having been made. *Id.* at 4.

Guy further alleged that, due to this disclosure, Newsmax and the condominium association "fear[ed] a discrimination [lawsuit]," so they "devised a plan to fire and evict" him. *Id.* Newsmax and the condominium association thereafter repeatedly harassed, stalked, threatened, and attempted to frame him and committed "fraud upon the court," including by "con[ning] employees of the State of Florida to assist in committing acts to keep [him] from any means or ability to litigate." *Id.* at 5.

Guy's home was foreclosed upon in state-court proceedings in September 2017. Guy appealed unsuccessfully to the Fourth District Court of Appeal.

Although the allegations centered on an alleged mortgage fraud scheme, the complaint's substantive claims concerned wrongs that allegedly took place in the foreclosure proceedings. The complaint asserted 19 numbered claims for relief, many of which contain allegations that overlap and that reference numerous court proceedings. We summarize them as best as we can understand them. Count I, against Fourth District Court of Appeal

---

[1] "Doc." numbers are the district court's docket entries.

Judge Edward Artau, alleged that details in that court's record in the foreclosure proceedings were altered, in violation of the Fourteenth Amendment and the Supremacy Clause. Count II, also against Judge Artau, alleged that the judge failed to enforce a state procedural rule against Plaza during the foreclosure proceedings, in violation of the Fourteenth Amendment. Count III, against Broward County Circuit Court Judge Joel Lazarus, alleged a Fourteenth Amendment violation by incorporating the allegations of Count I. Count IV, against Plaza's Vice President of Operations Keith Manson, alleged that Plaza had "unclean hands" in the foreclosure proceedings and that Plaza's claims should have been "dismissed with prejudice." *Id.* at 14. Count V, against an unknown clerk at the Fourth District Court of Appeal, alleged obstruction during the foreclosure proceedings relating to an attempt by Guy to remove the proceedings to federal court, in violation of the Fourteenth Amendment.

Count VI, against an unknown clerk at the Broward County Clerk of Court, alleged that dates on the docket in Guy's foreclosure case had been altered, in violation of the Fifth and Fourteenth Amendments. Count VII, against Judge Lazarus, alleged the same facts as Count VI, also in violation of the Fifth and Fourteenth Amendments. Count VIII, against an unknown clerk at the Broward County Clerk of Court, alleged that the State had failed to prosecute Manson for perjury during the foreclosure proceedings, in violation of the Fifth and Fourteenth Amendments. Counts IX and X, against Judge Artau, alleged as in Count I that the record

in the foreclosure proceedings was altered or that evidence was suppressed, in violation of the Fifth and Fourteenth Amendments.

Count XI, also against Judge Artau, alleged that the record in the foreclosure proceedings improperly was altered and that Plaza was allowed to commit mortgage fraud without consequence, in violation of the Fourteenth Amendment. Count XII, against Deputy Clerk of the Florida Supreme Court Mark Clayton, alleged that the clerk's office illegally dismissed his appeal from the Fourth District Court of Appeal, in violation of the Fourteenth Amendment. Count XIII, against unknown clerks in the Florida Supreme Court, Fourth District Court of Appeal, and Broward County Circuit Court, alleged that documents were removed from those courts' dockets in the foreclosure proceedings, in violation of the Fourteenth Amendment. Count XIV, against Judge Lazarus, alleged that Guy was denied the right to apply for indigency status in his foreclosure case, in violation of the Fourteenth Amendment. Count XV, against the "County Clerk of Courts of the Florida Supreme Court," *id.* at 28, alleged that Guy was denied the right to invoke the Florida Supreme Court's mandatory jurisdiction in seeking to appeal the Fourth District Court of Appeal's decision in his foreclosure case, in violation of the Fourteenth Amendment.

Count XVI, against the Deputy Clerk of the Florida Supreme Court, alleged that Guy was denied the right to seek a writ of certiorari to review his foreclosure case in the Supreme Court of the United States, in violation of the Fourteenth Amendment. Count XVII, against Judge Lazarus, alleged that the record in Guy's

foreclosure proceedings was repeatedly altered, denying him access to the courts, in violation of the Fourteenth Amendment. Count XVIII, against an unknown clerk at the Broward County Clerk of Court, alleged that his foreclosure proceedings were illegally dismissed, in violation of the First and Fourteenth Amendments. Count XIX, against Judge Lazarus, alleged that evidence was altered in Guy's foreclosure proceeding before the Fourth District Court of Appeal to cover up the fact that a person who physically attacked Guy was not arrested, in violation of the Fourteenth Amendment.

In addition to the 19 substantive counts, the complaint requested a preliminary injunction that would "stay the proceedings in the state court." *Id.* at 41. In the absence of an injunction, the complaint alleged, Guy would lose his home. And in the "Prayer [f]or Relief," the complaint reiterated the request for "[a]n emergency . . . injunction to stay all proceedings in any and every case that is the result of (and including)," the Broward County Circuit Court foreclosure proceeding. *Id.* at 43.

Guy sought leave to proceed *in forma pauperis*. The district court *sua sponte* reviewed the complaint under 28 U.S.C. § 1915(e)(2) and concluded, as relevant here, that the complaint should be dismissed for lack of jurisdiction under the *Rooker-Feldman* doctrine.[2] Thus, the court dismissed the complaint without

---

[2] *Rooker v. Fid. Tr. Co.*, 263 U.S. 413 (1923); *D.C. Ct. of Appeals v. Feldman*, 460 U.S. 462 (1983).

19-12852                Opinion of the Court                7

prejudice and denied as moot Guy's motion to proceed *in forma pauperis*.

Guy has appealed.

## II.

Guy argues that the district court erred in determining that his suit was barred by the *Rooker-Feldman* doctrine. We review *de novo* a district court's application of the *Rooker-Feldman* doctrine. *Lozman v. City of Riviera Beach*, 713 F.3d 1066, 1069 (11th Cir. 2013).

"The *Rooker-Feldman* doctrine eliminates federal court jurisdiction over those cases that are essentially an appeal by a state court loser seeking to relitigate a claim that has already been decided in a state court." *Target Media Partners v. Specialty Mktg. Corp.*, 881 F.3d 1279, 1281 (11th Cir. 2018). The doctrine "ensure[s] that the inferior federal courts do not impermissibly review decisions of the state courts—a role reserved to the United States Supreme Court." *Id.* Under the *Rooker-Feldman* doctrine, a federal court is barred from adjudicating a claim that was "either (1) one actually adjudicated by a state court or (2) one inextricably intertwined with a state court judgment." *Id.* at 1286 (internal quotation marks omitted).

"[A] claim that at its heart challenges the state court decision itself—and not the statute or law which underlies that decision— falls within the doctrine because it complains of injuries caused by state-court judgments and invites review and rejection of those

8                    Opinion of the Court                    19-12852

judgments." *Behr v. Campbell*, 8 F.4th 1206, 1211 (11th Cir. 2021) (internal quotation marks omitted). "[F]inding a claim to be barred by *Rooker-Feldman* requires that it amount to a direct attack on the underlying state court decision." *Id.* at 1212 (internal quotation marks omitted). The doctrine "does not block claims that require some reconsideration of a decision of a state court if the plaintiff presents some independent claim, albeit one that denies a legal conclusion that a state court has reached in a case to which he was a party." *Id.* (internal quotation marks omitted). In fact, in *Behr* we admonished district courts that the doctrine "will almost never apply." *Id.*

In *Behr*, we emphasized the importance of the complaint's prayer for relief: "claims that seek only damages for constitutional violations of third parties—not relief from the judgment of the state court—are permitted," whereas claims that directly seek relief from the state court's judgment are not. *Id.*; *see VanderKodde v. Mary Jane Elliott, P.C.*, 951 F.3d 397, 402 (6th Cir. 2020) (explaining that a court cannot determine whether a plaintiff's injury arises from the state-court judgment and is barred by *Rooker-Feldman* "without reference to the plaintiff's request for relief" (alteration adopted) (internal quotation marks omitted)), *cited with approval in Behr*, 8 F.4th at 1213.

This is one of those the rare cases in which the district court lacked jurisdiction to hear each claim in Guy's complaint under the *Rooker-Feldman* doctrine. This is because in each claim, Guy asked the district court to "review and reject" the state courts' judgments

in the foreclosure proceedings. *Behr*, 8 F.4th at 1213 (internal quotation marks omitted). Each claim alleged that actors in the state-court proceedings, whether judges, clerks, or an employee for the mortgage company, had prejudiced his state court foreclosure proceedings. This alone is not sufficient under *Behr* to invoke the *Rooker-Feldman* doctrine. But the relief Guy requested was a stay of the foreclosure proceedings in state court so that his condominium would not be foreclosed upon. This prayer for relief evidences a direct attack of the state-court judgment, just as we indicated in *Behr. Id.*; *see VanderKodde*, 951 F.3d at 402. So, the district court correctly determined that it lacked jurisdiction over any of the claims in the complaint under *Rooker-Feldman*.[3]

AFFIRMED.

---

[3] Guy asserts that he made an "*England* reservation" in state court, barring application of the *Rooker-Feldman* doctrine. Appellant Br. at 15–18. But the case he relies upon, *England v. La. State Bd. of Med. Exam'rs*, 375 U.S. 411 (1964), was a case concerning a different abstention doctrine. *See id.* at 421–23 (holding that a federal-court litigant forced into state court because of *Pullman* abstention may reserve the right to return to federal court). Guy cites no authority to support his argument that *England*'s reservation procedure is applicable in the *Rooker-Feldman* context.

Because we affirm on the basis that the district court lacked jurisdiction, we do not reach any of the alternative reasons the district court provided for dismissing the action, nor do we address Guy's alternative arguments on appeal.